FILED VIA MAIL

JUN 1 7 2014

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISON

IN RE :
WILLIAM ROGER PARSONS
KAREN LEE PARSONS

DEBTOR

ELOUISE K. HAHN , TRUSTEE OF
ELOUISE K. HAHN LIVING TRUST
AND SUCCESSORS, DBA MANAGING
MEMBER OF BURKE FINANCIAL, LLC
MEMBER OF WIN PAR HOSPITALITY
LAREDO LLC


WILLIAM ROGER PARSONS
DBA GENERAL PARTNER OF
WIN PAR HOSPITALITY, LLLP

DEFENDANT

CHARTER 13
CASE NO: 14-BK-0057-CJ



ADVERSARIAL PROCEEDING
CASE NO : 14-AP-00032-CCJ

AMENDED RESPONSE TO ADVERSARY PROCEEDURE CLAIMS

I WILLIAM R. PARSONS HAVE READ ALL THE CLAIMS AND DENY EACH ONE.
THEY ARE NOT TRUE OR ACCURATE AND SOME ARE IN REFERENCE TO ALAN T.
MINOR WHO WAS A PARTNER IN THE PROJECT .

I HAVE ATTACHED FIVE EXHIBITS FOR THE COURT .


JUNE 16TH 2014

AMOUNT OF $250,401 BASED ON A JUDGMENT BEARING INTEREST AT 4.75% PER ANNUM

COMES NOW the lender and former partnership member of Win Par Hospitality Laredo LLC, Eloise K. Hahn (Hahn), managing member of Burke Financial LLC and Trustee of the Eloise K. Hahn Living Trust who files this Objection to Debtor(s)/Defendant(s) claim that her Proof of Claim Number 4 be treated and paid as a general unsecured claim and says as follows:

1.    That the debt is a secured partnership debt due and owing to Hahn by Win Par Hospitality Laredo LLC, Parsons, and Minor., specifically the debt was used for nonrecourse financing to purchase a third lot, namely lot 13.

*DENIED*

2.    That the partnership debt in the amount of $250,000 is not an unsecured debt since the debtor, William Roger Parsons (Parsons), used Hahn's capital contribution in the amount of $149,003 to pay off the first mortgage loan for the LLC property, namely lots 11 and 12, Block 2, Jacaman Ranch, Unit 8, Webb County, Laredo, Texas, in May of 2007. Copies of the accounting records and mortgage note will be provided at the pretrial hearing.

*DENIED*

3.    That a cash warranty deed was recorded by Webb County which documents Parsons, a grantor, transferring the LLC lot titles, namely lots 11 and 12, Block 2, Jacaman Ranch, Unit 8, Webb County, Laredo, Texas from Win Par Hospitality Laredo LLC to the parties, Parsons and Thomas A. Minor (Minor), for a $10.00 simple fee. The property value at the time of transfer in May of 2007

*WITH HAHN KNOWLEDGE*

is estimated to have exceeded $1,300,000.  A copy of the cash

warranty deed will be provided at the pretrial hearing.

4.    That Parsons and Minor failed to notify Hahn

**DENIED**

of the transfer nor did they advise Hahn of the market value

of the LLC property at the time of transfer.  Instead they

used Hahn's LLC capital of $149,003 to pay off the first

mortgage note for lots11 and 12 so that they could use the

cash collaterol to purchase another lot, namely lot 13.

5    That  Parsons committed fraud when he

**DENIED**

failed to write Hahn a check for $149,003,  including his

failure to notify Hahn of the transfer to his name and the

other member's name, Thomas A. Minor (Minor).

Further, Parsons transferred the LLC property out of

the LLC name which attributed to the dissolution of the

entity since Parsons robbed the LLC of its assets and

transferred over $1,300,000 of assets to his name

and the other member, Minor.

6.    That Hahn's review of the accounting records

**DENIED**

documents Parsons retaining $67,000 on the LLC ledger

sheets for year 2008, so Minor and Parsons had enough

equity to pay the remaining mortgage note to Compass

Bank for $67,000 and avoid the foreclosure sale.

7.    That Parsons and Minor subsequently used the

collaterol of the two lots to purchase another lot, namely lot 13,

Block 2, Jacaman Ranch, Unit 8, Webb County, Texas.

    8.    That Parsons and Minor failed to notify Hahn *DENIED*
of the lot transfer, namely lots 11 and 12, except that they had
planned to buy another lot and Hahn would not need to be
on the land loan for the new lot, namely lot 13.

    9.    That Parsons and Minor used the cash collaterol
of lots 11 and 12 to obtain another mortgage for lot 13 in the
amount of $743,000 with Laredo National Bank.  Copies of the
warranty deed with vendors, deed of trust, security agreement,
financing statement, and assignment of rents will be provided at
the pretrial hearing.

    10.    That Parsons conveyed $130,000 to Minor *DENIED*
upon receipt of Hahn's capital contribution to the LLC in
year 2006 in the amount of $220,700.

    11.    That Parsons conveyed additional lump sums
of cash to Minor in years 2006 through 2008 from the LLC *DENIED*
and failed to advise Hahn of the transfers to Minor.

    12    That Parsons used Hahn's remaining LLC capital
contribution of $71,696  to pay off additional notes and debts *DENIED*
which were used to purchase lot 13, namely lot 13, block 2, unit 8,
Jacaman Ranch.

    13.    That Parsons and Minor extended financing
for lot 13 in May of 2008 in the amount of $67,000 with Compass *DENIED*
Bank. successor lender to Laredo National Bank..  A copy of the

loan modification will be provided at the pretrial hearing.

    14.    That Parsons and Minor failed to pay the         DENIED

the outstanding due amount of $67,000 to Compass Bank

to avoid a foreclosure sale. They did so willfully.

    15.    That Parsons and Minor were notified of the         DENIED

foreclosure sale in January of 2009 and advised Compass

Bank to proceed in the foreclosure. Compass Bank purchased

all three lots in multiple sale transactions for $802,156 each

and/or sold all three lots for $802,156 on February 3, 2009.

    16.    That Minor and Parson received the net          DENIED

sale proceeds once the remaining mortgage amount

of $67.000 and 5% trustee and attorney fees were paid.

    17.    That Parsons fraudulently conveyed clouded        DENIED

title to the successor trustee, namely Claudia Garcia, since

he had failed to pay Hahn her capital contribution of $149,003

for lots 11 and 12. A copy of the LLC operating agreement

will be provided at the hearing. In accordance with the

operating agreement Hahn should have been notified by

Parsons of his intentions to buy out a significant portion of her

LLC membership, including an offer for the LLC units contingent

on Hahn's acceptance.

    18.    That Parsons used Hahn's remaining LLC        DENIED

capital contribution of $71,696 to pay off the remaining

LLC debts due and owing in year 2008 and retained $67,000

as earnings in year 2008.

19.   That Parsons and Minor failed to file for

bankruptcy in year 2008, including Parsons failure to file a

voluntary bankruptcy petition against the LLC due to insolvency.

DENIED

20.   That Parsons dissolved the LLC on

September 25, 2009, after he executed a promissary note

with Minor promising to pay Hahn $250,000 on a best

efforts basis.

21.   That Parsons provided the promissary note to

Hahn to replace the settlement agreement he executed with

Minor promising to pay Hahn $250,000 plus 18.2 percent of

sale profits which exceeded $1,300,000 after all closing

costs and mortgages were paid.  Hahn believes he replaced

the settlement agreement with the promissary note since

Parsons and Minor elected to conceal any profits they received

in the sale of the LLC business property.

DENIED

22.   That Parsons failed to advise Hahn that Minor

and he had already purchased the LLC lots in year 2007

when he executed the settlement agreement with her.

DENIED

23..   That the debt to Hahn in the amount of $250,000

is a secured partnership debt due and owing by the LLC, Parsons,

and Minor to her.

DENIED

24.   That Hahn's capital contribbution of $220,700

was a secured debt since it was used to pay off the first

DENIED

mortgage of the LLC property, being lots 11 and 12, as
well as, Hahn's $71,700 which was used as nonrecourse
financing to purchase lot 13 in the amount of $743,000.

    25    That the remaining LLC capital from Hahn
was used to pay off the remaining debts and notes due and
owing by the LLC

DENIED

    26..    That Minor received his capital contribution
to the LLC in the amount of $130,000 upon receipt of
Hahn's capital in the amount of $220,700 in year 2006
and failed to notify Hahn of the transfer.

DENIED

    27.    That Minor did not use his capital for a down
payment to purchase lot 13 with Parsons. Instead Parsons and
Minor used Hahn's capital of $149,003 and $71,696 to purchase
lot 13. Parson's capital of $40,000, the Brevard County Hotel
Association capital of $47,000, and capital from other notes of
the LLC and lines of credit were all paid off prior to the sale of
the LLC property on February 3, 2009. In accordance with the
subscription agreement executed between Hahn and Parsons
the LLC, Parsons and Minor were obligated to pay Hahn her
capital contribution of $220,700 at the time of the sale, including
18.2 % of the profits since all debts had been paid off after
the closing of the LLC lot sales on February 3, 2009. A
summary of the sale is included in the attached addendum.

DENIED

    28.    That Minor and Parsons used Hahn's capital of

$220,700 as a nonrecourse loan to finance the outstanding

loans and notes of the LLC, namely Win Par Hospitality Laredo

LLC and the new mortgage note they received from Laredo

National Bank for $743,000. In other words they used the paid

collaterol of lots 11 and 12 to purchase lot 13 or a total cost of

$743 000 for all three lots ($631,000 + $64,000 = $695,000).

The attached addendum provides a summary of the nonrecourse

financing used by the LCC, Minor, and Parsons.

DENIED

29.    That Parsons and Minor received the

net sale proceeds from Compass Bank in year 2009

but failed to remit to Hahn a check in the amount of $250,000,

including 18.2% of the profits.

DENIED

30.    That Parsons and Minor have not provided

Hahn the closing statements from the multiple lot sale

transactions which occurred on February 3, 2009,

with Compass Bank.

31.    That Parsons may owe Hahn additional

proceeds from the lot sales on February 3, 2009,

since the net proceeds may have exceeded $1,300,000.

The outstanding mortgage amount for $67,000 was paid

to Compass Bank at the time of sale.

DENIED

32.    That apparently Minor and Parsons

have concealed a BIG MISTAKE in that they carefully

concealed the lot equities and net sale proceeds they

DENIED

received in excess of $2,400,000 and/or $695,000.

     33    That Minor has committed perjury on his chapter 7 petition by jointly listing his spouse and himself owing Laredo National Bank $743,000 instead of jointly listing Parson as a co-debtor owing Compass Bank $67,000 or less.

N/A

     34.    That Parsons and Minor apparently received over $2,400,000 and/or $695,000 from Compass Bank on February 3, 2009, since the equity of the lots far surpassed the outstanding mortgage debt of $67,000 and all debts and liabilities had been paid except for the closing costs and outstanding note for $67,000.

DENIED

     35    That U.S. Title documents multiple sale transactions, being lots 11, 12, and 13, each being sold for $802,156 on February 3, 2009, and/or one sales transaction for $802,156.

The title report fails to document a single sale transaction on February 3, 2009 for $802,156.

DENIED

     36.    That Minor alleges three lots being mortgaged for $743,000 on his chapter 7 petition instead of three lots mortgaged for $67,000.

A copy of the revised mortgage note with Compass Bank will be provided at the pre-trial hearing.

N/A

     37.    That Compass Bank purchased the

DENIED

three lots in three separate sale transactions and/or one sale transaction.  The purchase price was either $2,406,468 or $802,156.  Parsons and Minor continue to refrain in providing Hahn closing statements and purchasing contracts to  conceal the monetary proceeds they both received at the time of sale on February 3, 2009.

### CLAIM FOR RELIEF

WHEREFORE, the Proof of Claim filed by Eloise K. Hahn, namely Proof of Claim Number 4, should be treated and paid as a general partnership secured claim in the total amount of $250,401 based on a Judgment bearing interest at 4.75% per annum.

Date:  April 16, 2014          Respectfully submitted,

*Eloise K Hahn*

Eloise K. Hahn, Trustee
Eloise K. Hahn Living Trust
Managing Member of Burke Financial LLC
Member of Win Par Hospitality laredo LLC
313 East 1300 North
Chesterton, IN  46304

### CERTIFICATE OF SERVICE PURSUANT TO F.R.B.P. 7004

I HEREBY CERTIFY that a true and correct copy of the foregoing has been mailed via UPS mail  to William R. Parsons, 152 Martesia Way, Indian Harbor Beach  32937, including copies to Carole Suzanne Bess,



Law Offices

# TreviñoVallsHaynes
A Limited Liability Partnership

6909 Springfield Ave. Suite 200 78041     P.O. Box 450989 78045     Laredo Texas     Tel: (956) 722-1417

**Claudia L. Garcia**                                      **Email: clgarcia@tvhlawfirm.com**

December 15, 2008

**Mr. Thomas Alan Minor**
11603 Hardwood Dr.
Midlothian, Virginia 23114

**Mr. Thomas Alan Minor**
6428 Sinatra Parkway
Laredo, Texas 78041

**Mr. Thomas Alan Minor**
6427 Polaris Dr.
Laredo, Texas 78041

**Mr. Thomas Alan Minor**
2311 Saturn Dr.
Laredo, Texas 78041

Re:     NOTICE OF ACCELERATION AND FORECLOSURE SALE regarding the
following instruments, among others (collectively, the "Loan Documents")

Deed of Trust ("Deed of Trust"):

| | |
|---|---|
| Dated: | May 29, 2007 |
| Grantor: | **Thomas Alan Minor and William R. Parsons** |
| Trustee: | Marco Montemayor |
| Lender: | Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank |
| Recorded as: | Document No. 967017, at Volume 2370, Page 122 et seq., of the Official Public Records of Webb County, Texas |
| Secures: | Real Estate Lien Note ("Note") in the original principal amount of $743,000.00, executed by **Thomas Alan Minor and William R. Parsons** and payable to the order of Lender, and all other indebtedness of **Thomas Alan Minor and William R. Parsons** to Compass Bank, an Alabama Banking Corporation, successor in |

interest to Laredo National Bank.

| | |
|---|---|
| Modification: | Renewal, Extension and Modification of Real Estate Lien dated June 18, 2008, but effective May 29, 2008. Recorded as Document No. 1011805, Volume 2626 Page 32 et. seq., of the Official Public Records of Webb County. |
| Property: | **TRACT I: SITUATED IN WEBB COUNTY, TEXAS AND BEING THE SURFACE ONLY OF LOT NUMBER THIRTEEN (13), IN BLOCK NUMBER TWO (2), JACAMAN RANCH SUBDIVISION, UNIT 8, A SUBDIVISION IN THE CITY OF LAREDO, AS PER PLAT RECORDED IN VOLUME 25, PAGES 20-21, WEBB COUNTY PLAT RECORDS** |
| | **TRACT II: SITUATED IN WEBB COUNTY, TEXAS, AND BEING THE SURFACE ONLY OF LOTS NUMBERS ELEVEN (11) AND TWELVE (12) IN BLOCK NUMBER TWO (2), JACAMAN RANCH SUBDIVISION, UNIT 8, A SUBDIVISION IN THE CITY OF LAREDO, AS PER PLAT RECORDED IN VOLUME 25, PAGES 20-21, WEBB COUNTY PLAT RECORDS** |

Dear Mr. Minor:

This letter is written at the request and on behalf of our client, Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank. Written notice dated Decemebr 3, 2008, was served on Grantor by this law firm on behalf of Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank by certified mail, return receipt requested, informing Grantor of the existence of one or more defaults under the Note and the Deed of Trust ("Defaults"). The Note, among other things, constitutes part of the indebtedness secured by the Deed of Trust ("Indebtedness"). In that notice, demand was made on Grantor to pay the unpaid past due amounts then owing under the Note, and Grantor was advised of The Laredo National Bank's intention to accelerate the maturity of the Note if the Defaults were not cured.

According to the records of Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank, Grantor has not cured the Defaults. Therefore, Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank, by this letter, accelerates the maturity of the Indebtedness (including all unpaid principal of, and all lawful accrued and unpaid interest under, the Note), and declares the entire Indebtedness immediately due and payable. Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank makes demand on Grantor, and on all persons and entities obligated on the Note (except to the extent that the obligation is expressly limited by written contract or applicable law), for payment in full of the entire Indebtedness.

If any party who receives this letter is a debtor in a bankruptcy proceeding subject to the provisions of the United States Bankruptcy Code (Title 11 of the United States Code) ("Code"), this letter is merely intended to be written notice that formal demand has been made in compliance with

the Loan Documents and applicable law. This letter is not an act to collect, assess or recover a claim against that party, nor is this letter intended to violate any provisions of the Code. Any and all claims that Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank asserts against that party will be properly asserted in compliance with the Code in the bankruptcy proceeding. In addition, all of Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank's claims, demands and accruals regarding the Loan Documents, whenever made, and whether for principal interest or otherwise, are intended to comply in all respects, both independently and collectively, with all applicable usury laws, and are accordingly limited so that all applicable usury laws are not violated.

According to the records of Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank, $767,698.05 is due under the Note as of December 15, 2008. That amount, **plus all interest that accrues after that date at the maximum legal rate per diem and LEGAL FEES IN THE MINIMUM AMOUNT OF $1,000.00 and collection expenses,** must be paid to cure the default that exists in the payment of the Note. **You may contact Mr. Kent Richard of Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank at (956) 764-2808, to obtain the exact amount that must be paid on any specific date to cure all defaults.**

Nothing contained in this letter is intended to waive any default or event of default, waive any rights, remedies, or recourses available to Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank, or be an election of remedies resulting from any default that may exist with respect to the Loan Documents.

**THE UNDERSIGNED AND THE ABOVE NAMED LAW FIRM IS ATTEMPTING TO COLLECT THE DEBT REFERENCED HEREIN AND ANY INFORMATION OBTAINED BY THE UNDERSIGNED FIRM WILL BE USED FOR THAT PURPOSE.**

If you have any questions that you believe I can answer, you or, if you are represented by an attorney, your attorney may contact me at the above direct telephone number or address.

Sincerely,

Claudia L. Garcia

CLG/ms

Enclosure:   Notice of Foreclosure Sale

xc:   Compass Bank, an Alabama Banking Corporation, successor in interest to Laredo National Bank

G:\ONLINEFORMS\NOTES\WLST
REAL ESTATE LIEN NOTE

## NOTICE

**NOTICE:  THIS DOCUMENT AND ALL OTHER DOCUMENTS RELATING TO THIS LOAN CONSTITUTE A WRITTEN LOAN AGREEMENT WHICH REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES RELATING TO THIS LOAN.**

**THE LAREDO NATIONAL BANK**

Date: 5-29-0

**THOMAS ALAN MINOR**

By:_____                                    **DEBTOR/OBLIGOR**

Title:_____ Date:_____          _____ Date:_____

FINANCIAL INSTITUTION                              **WILLIAM R. PARSONS**

                                                                              **DEBTOR/OBLIGOR**


## REAL ESTATE LIEN NOTE


**$743,000.00**                         **Laredo, Texas**                    May   29              , 2007

FOR VALUE RECEIVED, the undersigned **THOMAS ALAN MINOR** and **WILLIAM R. PARSONS** ("Maker", whether one or more), hereby promises to pay to the order of **THE LAREDO NATIONAL BANK** ("Holder") in the City of Laredo, Webb County, Texas, in lawful money of the United States of America, the principal sum of **SEVEN HUNDRED FORTY-THREE THOUSAND AND NO/100THS DOLLARS ($743,000.00)** or so much thereof as may be advanced and outstanding, together with interest on the principal balance from time to time remaining unpaid from the date of advance until the Maturity Date (as hereinafter defined) at the rate hereinafter provided.

**Maturity Date**:  As used herein, the "Maturity Date" for this Note shall be the first to occur of acceleration in accordance with the terms of this Note, or May   29  , 2008.

**Interest Rate**:  Prior to the Maturity Date of this Note, interest on the principal balance advanced

---

and outstanding shall accrue at a rate per annum of **one** percent **(1.00%)** in excess of the prime rate as reported in the Money Rates section of the Wall Street Journal (or if such rate is not available, a comparable interest rate index selected by Holder), adjusted as such prime rate may change from time to time during the term of this Note; provided, however, that such interest rate may never exceed the highest rate permitted by applicable law on this transaction. The beginning interest rate of this Note is **nine and one-fourth** percent **(9.25%)** per annum.

All payments of interest shall be computed on the per annum basis of a year of 360 days and for the actual number of days elapsed unless such calculations would result in a usurious rate, in which case interest shall be calculated on the per annum basis of a year of 365 or 366 days, as the case may be.

**Maximum Interest Ceiling:** To the extent that Texas law establishes the maximum ceiling, the parties elect the Weekly Rate Ceiling under Chapter 303 of Title 4 of the Texas Finance Code, which title may also be cited as the Texas Credit Title.

**Payment of Principal and Interest**: This Note is due and payable as follows, to-wit:

> The principal balance of this Note advanced and outstanding is due and payable on or before the ___29___ day of **May, 2008.**

> The accrued interest on the principal balance of this Note advanced and outstanding is due and payable in quarter-annual installments, being due and payable on the ___29___ day of **August, 2007**, the ___29___ day of **November, 2007**, and the ___29___ day of **February, 2008,** with a final installment of accrued interest being due and payable on the Maturity Date of this Note.

Interest will be calculated on the unpaid principal balance to date of each payment. Each payment will be first applied to reduce the amount owed for charges which are neither interest nor principal, including but not limited to any late charges and insurance and tax escrow, if any. The remainder of each payment, if any, will then be applied first to reduce accrued and unpaid interest and then any remaining amount will be applied to unpaid principal.

All payments called for hereunder shall (a) be paid in lawful money of the United States of America in federal or other immediately collected funds, which, at the time of payment is legal tender for the payment of public and private debts; and (b) be made to the Holder at 700 San Bernardo, Laredo, Texas 78040, or at such other address as the Holder may from time to time designate in writing to Maker.

**Security**: This Note is secured by a Deed of Trust of even or near even date herewith ("Deed of Trust") executed by **Maker** to **MARCO MONTEMAYOR** as Trustee, covering and constituting a **first** lien on the real property more fully described below and in the Deed of Trust, and on the

06-22-07 SE/LNB/Minor Thomas A. $743,000.00 AG          Page 2 of 8

improvements, fixtures and other property more fully described in the Deed of Trust. The real property is described as follows:

TRACT I:  Situated in Webb County, Texas, and being the SURFACE ONLY of Lot Number THIRTEEN (13), in Block Number TWO (2), JACAMAN RANCH SUBDIVISION, UNIT 8, a subdivision in the City of Laredo, as per Plat recorded in Volume 25, pages 20-21, Webb County Plat Records.

TRACT II:  Situated in Webb County, Texas, and being the SURFACE ONLY of Lots Number ELEVEN (11) and TWELVE (12), in Block Number TWO (2), JACAMAN RANCH SUBDIVISION, UNIT 8, a subdivision in the City of Laredo, as per Plat recorded in Volume 25, pages 20-21, Webb County Plat Records.

The Deed of Trust and all other documents or instruments securing or to secure the Note are sometimes collectively referred to herein as the "Security Documents."

Purpose: This Note represents funds advanced at the request of Maker as part of the purchase price of the hereinabove mentioned property.

Maker represents and warrants to Holder and to all other owners and holders of this Note, that the loan evidenced hereby is for business, commercial, investment, agricultural or other similar purposes, and not primarily for personal, family, or household use, as such terms are used in the Texas Finance Code.  In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit accounts, revolving loan accounts and revolving tri-party accounts) apply to the loan evidenced by this Note.

Limitation On Interest: This Note and all documents securing it have been executed under and shall be construed and enforced in accordance with the laws of the State of Texas, except to the extent United States federal law permits Holder to contract for, charge or receive a greater amount of interest or otherwise preempts state law.  It is expressly stipulated and agreed to be the intent of Maker and Holder to at all times comply strictly with the applicable usury laws now or hereafter governing consideration contracted for, charged or received under the Note, Security Documents or any other agreements between the parties.  This Note and all agreements between Maker and Holder which are now existing or hereafter arising are hereby expressly limited so that in no event whatsoever shall the amount paid, or agreed to be paid to Holder for the use, forbearance or detention of money to be loaned hereunder or otherwise exceed the maximum amount permissible under applicable law.  If, from any possible construction of any document, interest would be otherwise payable in excess of the maximum amount permitted by applicable law, any such construction shall be subject to the provisions of this paragraph and such document shall be

automatically reduced to the maximum rate permitted by law, without the necessity of the execution of any amendment or new document. If the applicable law is ever revised, repealed or judicially interpreted so as to render usurious any consideration called for, contracted for, charged, taken, reserved or received with respect to the Note, the Security Documents, or any other agreement between the parties, or if Holder should ever receive anything of value deemed interest under applicable law which would exceed interest at the highest lawful rate, or if any prepayment by Maker, or Holder's exercise of the options herein contained to accelerate the maturity of this Note, results in Maker having paid any interest in excess of that permitted by applicable law, then notwithstanding anything to the contrary in this Note, the Security Documents or any other agreement between the parties, it is Maker's and Holder's express intent and agreement that all excess amounts theretofore collected by Holder be credited on the principal balance of this Note (or, if this Note has been paid in full, refunded to Maker) and the provisions of this Note, the Security Documents and any other agreements, shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the then applicable law, but so as to permit the recovery of the greatest amount otherwise called for hereunder and thereunder. The right to accelerate the maturity of this Note does not include the right to accelerate any interest which has not otherwise accrued on the date of such acceleration, and Holder does not intend to collect any unearned interest in the event of acceleration. All consideration paid or agreed to be paid to the Holder that constitutes interest under applicable law shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full term of the indebtedness of Maker to Holder (including the period of any renewal or extension hereof) so that the rate of interest on account of such indebtedness is uniform throughout the term hereof and so that the rate of interest on account of such indebtedness does not exceed the usury ceiling from time to time in effect and applicable to the loan evidenced by this Note for so long as the debt is outstanding. The term "applicable law" and similar terms used herein refer to the law in effect on the date of the first disbursement under this Note; provided that if the law is subsequently revised to permit more interest to be charged on the loan evidenced by this Note, then Holder and Maker agree that to the extent permitted by law, such revised law shall be the "applicable law" as used herein. The provisions of this paragraph shall control all agreements between the Maker and the Holder.

**Prepayment**: Maker shall have the right to prepay this Note in whole or in part at any time without penalty, and interest shall immediately cease to accrue on any amount so prepaid. All partial prepayments shall be applied to the principal installments in inverse order of maturity.

**Default**: It is hereby agreed that:

      (i)     If default shall be made in the payment of any part of the principal or interest on this Note when due, or in the payment of any other sums due under the Deed of Trust or the other Security Documents, if any; or

05-23-07.SF/LNB/Minor.Thomas A. $743,000.00 AG          Page 4 of 8

(ii)    If default shall be made in the performance or observance of any of the terms, covenants and agreements contained in this Note, the Deed of Trust or any other Security Documents or in any instrument executed in connection with this Note;

then, without notice or demand, the entire unpaid principal balance of and accrued unpaid interest on this Note, shall, at the option of the Holder hereof, become immediately due and payable.

**Late Charge:** If any installment, whether principal or interest, becomes overdue more than ten (10) days, Holder may collect from Maker a late charge of five percent (5%) of the total amount of the installment, (which amount Maker agrees is reasonable), except on the final installment.

**Post Maturity Interest:** Maker agrees that after the Maturity Date of this Note, whether by acceleration or by the passage of time, matured unpaid principal shall bear interest from date of maturity until paid at the highest written contract rate permitted by applicable law on this transaction, or if no such highest rate is established by applicable law, then at a rate of eighteen percent (18.00%) per annum. Post Maturity interest shall be due and payable upon demand, and if no demand, then on the first day of each and every month after the Maturity Date. The rights of Holder under this paragraph shall in any event be subject to the limitations set forth in the paragraph captioned "Limitation on Interest".

**Fees and Expenses:** Maker agrees to pay any loan fees, including but not limited to origination fees, allowed by law that may be charged for the loan evidenced by this Note, and all other fees and expenses in connection with this Note which are allowed by law.

If this Note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceedings, then Maker shall pay Holder all costs of collection and enforcement (whether or not any judicial action is actually instituted), including reasonable attorney's fees and court costs, in addition to other amounts due, it being understood that Holder shall be entitled to exercise all rights and remedies granted to Holder as a secured creditor under the terms of the Deed of Trust or other Security Documents, and all other remedies which Holder shall be entitled to under the law.

**WAIVERS:** EXCEPT FOR SUCH NOTICES AS MAY BE REQUIRED BY ANY OTHER PROVISIONS IN THIS NOTE, EACH MAKER AND ALL SURETIES, ENDORSERS, GUARANTORS AND ANY OTHER PARTY NOW OR HEREAFTER LIABLE FOR THE PAYMENT OF THIS NOTE IN WHOLE OR IN PART, HEREBY JOINTLY AND SEVERALLY (i) WAIVE DEMANDS FOR PAYMENT, PRESENTATIONS FOR PAYMENT, NOTICE OF NONPAYMENT, PROTEST, NOTICE OF PROTEST, NOTICE OF INTENT TO ACCELERATE MATURITY, NOTICE OF ACTUAL ACCELERATION OF MATURITY AND ALL OTHER

NOTICES, FILING OF SUIT AND DILIGENCE IN COLLECTING THIS NOTE OR ENFORCING ANY OF THE SECURITY HEREFOR, (ii) AGREE TO ANY SUBSTITUTION, SUBORDINATION, EXCHANGE OR RELEASE OF ANY OF SUCH SECURITY OR THE RELEASE OF ANY PARTY PRIMARILY OR SECONDARILY LIABLE HEREON, (iii) AGREE THAT THE HOLDER HEREOF SHALL NOT BE REQUIRED FIRST TO INSTITUTE SUIT OR EXHAUST ITS REMEDIES HEREON AGAINST THE MAKER, OR ANY ONE OF THEM, OR OTHERS LIABLE OR TO BECOME LIABLE HEREON, OR TO ENFORCE ITS RIGHTS AGAINST THEM OR ANY SECURITY HEREOF, (iv) CONSENT TO ANY EXTENSION OR POSTPONEMENT OF TIME OF PAYMENT OF THIS NOTE AND TO ANY OTHER INDULGENCE WITH RESPECT HERETO WITHOUT NOTICE THEREOF TO ANY OF THEM AND WITHOUT AFFECTING THEIR LIABILITY HEREUNDER.

Holder shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies under this Note or any of the Security Documents unless such waiver is in writing and signed by Holder, and then only to the extent set forth in writing. The failure of Holder to exercise any remedy or option shall not constitute a waiver on the part of Holder of the right to exercise any remedy or option at any other time. The acceptance by Holder of any payment hereunder that is less than payment in full of all amounts due and payable at the time of such payment shall not constitute a waiver of the exercise of any remedy or option at that time or at any subsequent time, or nullify any prior exercise of any remedy or option without the express written consent of Holder.

**Acceleration Upon Assumption**: Maker expressly acknowledges and agrees that this Note may not be assumed by any other person or legal entity without the express written consent of the Holder of this Note, which consent may be withheld by Holder in its sole discretion. In the event such assumption occurs without Holder's written consent, Holder shall have the option of accelerating indebtedness evidenced by this Note and declaring the then unpaid principal balance and accrued unpaid interest immediately due and payable.

**Acceleration Upon Disposition**: In the event of a sale, lease, transfer, conveyance, assignment or any other disposition of all or any portion of, or interest in, the Property securing this Note, or the beneficial ownership interest in Maker, without the prior written consent of Holder, which consent may be withheld by holder in its sole discretion, then Holder shall have the option of accelerating the indebtedness evidenced by this Note and declaring the then unpaid principal balance and accrued unpaid interest immediately due and payable.

**Notices**: All notices hereunder shall be given at the following addresses:

If to Maker:          **THOMAS ALAN MINOR**
                      **11603 Hardwood Dr.**
                      **Midlothian, Virginia  23114**

**WILLIAM R. PARSONS**
**152 Martesia Way**
**Indian Harbor Beach, Florida  32937**

If to Holder:       **THE LAREDO NATIONAL BANK**
**P. O. Box 59**
**Laredo, Texas  78042-0059**
**ATTN: MARCO MONTEMAYOR**

Any party may change its address for notice purposes upon giving thirty (30) days prior notice thereof in accordance with this paragraph.  All notices given hereunder shall be in writing and shall be considered properly given if mailed by first-class United States Mail, postage prepaid, or by delivering same to the intended addressee.  Any notice mailed as above provided shall be deemed effective upon its deposit in the custody of the U.S. Postal Service; all other notices shall be effective upon actual receipt.

**Governing Law; Venue:  Except to the extent that federal laws preempt the laws of the State of Texas, this Note shall be interpreted, construed and governed under the laws of the State of Texas, without regard to the conflict of laws provisions thereof.  Maker agrees that Webb County, Texas shall be the proper venue for any judicial proceeding brought in connection with this Note.**

**Number and Gender; Parties**: In this Note the singular shall include the plural and the masculine shall include the feminine and neuter gender, and vice versa, if the context so requires.  The term "Holder" means The Laredo National Bank or, if applicable, any subsequent holder of this Note.

**Headings**: Headings at the beginning of each paragraph of this Note are intended solely for convenience of reference and are not to be construed as being a part of the Note.

**Time of Essence**: Time is of the essence with respect to every provision hereof.

**Joint and Several Liability**: If this Note is executed by more than one party, each such party shall be jointly and severally liable for the obligations of Maker under this Note.

**Successors and Assigns**: The terms and conditions hereof shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto; provided, however, that Maker may not assign this Note or any loan funds, or assign or delegate any of its rights or obligations, without the prior written consent of Holder in each instance.

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE BANK IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE BANK YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME BANK.**

IN WITNESS WHEREOF Maker has duly executed this Note as of the day and year first above written.


_____

**THOMAS ALAN MINOR**


_____

**WILLIAM R. PARSONS**


[Signature page to **$743,000.00** Real Estate Lien Note dated ____May 29____ , **2007,** executed by **THOMAS ALAN MINOR and WILLIAM R. PARSONS** in favor of The Laredo National Bank.]

## SUBSCRIPTION AGREEMENT

William R. Parsons, Member/Manager/President
WINPAR HOSPITALITY LAREDO, LLC
3550 N. ATLANTIC AVENUE
COCOA, BEACH FL 32931

Manager:

I, ELOISE HAHN, Manager of BURKE FINANCIAL, LLC, a Nevada limited liability company, 1631 S. Clarence Avenue, Berwin, Illinois 60402, hereby offer to purchase a eighteen and two tenths percent (18.2%) interest (the "Interest") in WINPAR HOSPITALITY LAREDO, LLC, a Florida limited liability company (the "Company"), including an 18.2% interest in the profits, losses, distributions, and capital of the Company, at and for a purchase price of $600,000.00 (the "Proceeds").

This offer is made on the following terms:

1.    *Representations and Warranties.* I hereby represent and warrant to the Company, its Manager, and Members, that:

1.1.    I am a citizen of the United States and am at least twenty-one (21) years of age.

1.2.    I am a bona fide resident of the State of Illinois and maintain my principal residence at the address set forth at the end of this offer. I have no present intention of moving my principal residence to a different state or territory.

1.3.    The Interest will be acquired by me for investment only, for my own account, and not with a view to resale, or offer for sale, or for sale in connection with the distribution or transfer thereof. The Interest is not being purchased for subdivision or fractionalization thereof; and I have no contract, undertaking, agreement, arrangement, or plans with any person or entity to sell, hypothecate, pledge, donate, or otherwise transfer to any such person or entity all or any part of the Interest.

1.4.    My present financial condition is such that I am under no present or contemplated future need to dispose of any portion of the Interest to satisfy any existing or contemplated undertaking, need, or indebtedness.

1.5    Burke Financial, LLC is solely ~~owned and~~ managed by Eloise Hahn. _EkH 11/10/06_

2.    *Acknowledgment of Certain Facts.* I acknowledge my awareness and understanding of the following:

2.1.    The purchase of the Interest is a speculative investment which involves a high degree of risk of loss by me of my entire investment.

2.2.    I have both the knowledge and experience in financial matters sufficient to evaluate the purchase of the Interest and am able to bear the economic risk of the purchase.

2.3.    No federal or state agency has made any finding or determination as to the fairness for public investment, nor any recommendation or endorsement of, the Interest.

2.4.    There are restrictions on the transferability of the Interest; there will be a limited market for the Interest; and, accordingly, it may not be possible for me to liquidate readily, or at all, my investment in the Company in case of an emergency or otherwise.

1

2.5.    The Interest has not been registered under the Securities Act of 1933 (the "Act") or applicable state securities laws (the "State Acts"). It is the intent of the Company to operate its business so as not to require any such registration. This may limit significantly the transferability of the Interest.

2.6.    The Interest has been acquired pursuant to an investment representation on my part and shall not be sold, pledged, hypothecated, donated, or otherwise transferred, whether or not for consideration, by me, except in compliance with the terms of the Regulations.

2.7.    The Company does not file, and does not in the foreseeable future contemplate filing, periodic reports in accordance with the provisions of paragraph 13 or 15(d) of the Securities Exchange Act of 1934, and the Company has not agreed to register any of its securities for distribution in accordance with the provisions of the Act or to take any actions respecting the obtaining of an exemption from registration for such securities or any transaction with respect thereto.

2.8.    Any certificate representing the Interest which is issued by the Company shall be imprinted with a conspicuous legend in substantially the following form:

"The Interest represented by this Certificate is subject to and may be transferred only in compliance with the provisions of the Regulations of the Company, a copy of which is on file at the Company's principal office."

3.    *Compliance with the Regulations.* I agree that the Interest will not be transferable under any circumstances, except upon the conditions specified in this Section 3. I realize that by becoming a member of the Company, I must, prior to any transfer of the Interest, fully comply with the provisions of the Regulations and give written notice to the Company expressing my desire to effect the transfer and describing briefly the proposed transfer. Upon receiving the notice, the Company shall present copies thereof to counsel of the Company; and, if the transfer is permitted thereunder, the applicable provisions of the Regulations shall apply.

4.    *Acknowledgment of Access to Records.* I acknowledge that I have been furnished and have reviewed the Articles of Organization and the Regulations of the Company and all amendments to those documents. I acknowledge that all instruments, documents, records, books, and financial information pertaining to this investment have been made available for inspection by me and my professional advisors and that the books and records of the Company will be available upon reasonable notice for inspection by me during reasonable business hours at its principal place of business. There is available to me, by contacting the Manager of the Company, the opportunity to ask questions and receive answers concerning the terms and conditions of the sale of the Interest and to obtain any additional information which the Company possesses or can obtain without unreasonable effort or expense that is necessary to verify information.

5.    *Successors and Assigns.* This offer shall be binding upon me and shall inure to the benefit of the Company, its Manager and Members, and their respective heirs, personal representatives, successors, and assigns. Neither this offer nor any part of it is assignable by me.

6.    *Florida Law.* The terms and provisions of this offer and any dispute arising hereunder shall be governed by the internal law, not the law of conflicts, of the State of Florida.

7.    *Purchase Price and Use of Proceeds.*

7.1    The Purchase Price for the Interest shall be Six Hundred Thousand Dollars ($600,000.00) to be paid as follows:

7.1.1    $220,700.00 due upon the execution of this Agreement and

2

7.1.2   $379,300.00 due upon the commencement of construction for the Project as notified to me in writing by the Manager of the Company

7.2   In the event the Project is sold by the Company then after all of the Company's debts and liabilities are satisfied the remaining available cash shall be distributed first to Me up to the amount of all capital contributions made by me to date and then any remaining cash shall be distributed among the Members of the Company pro-rata pursuant to the Regulations of the Company, provided, however, that nothing herein contained shall impose any obligation upon the other members of the Company to contribute additional capital to the Company in the event that there is a shortfall of available cash or capital.

7.3 The Company shall use the Proceeds for the development and construction of a hotel/resort ("Project") to be located upon the real property owned by the Company in Laredo, Texas.

7.4 I understand and agree that in the event that I fail to timely pay and contribute the entire Purchase Price upon the payment term described in Section 7.1 above that I shall be in default of the terms of this Agreement and that the Company may either (a) keep all contributions and Proceeds paid to date as agreed upon liquidated damages and I shall thereupon forfeit any interest or ownership I have in the Company and both parties shall be relieved of all liabilities and obligations arising under this Agreement or (b) the Company may at its option seek specific performance as a remedy.

IN WITNESS WHEREOF, I have executed this offer the day and year first above written.

WITNESS:

BURKE FINANCIAL, LLC

By: _____ (SEAL)
Eloise Hahn, Manager
1631 S. Clarence Avenue
Berwin, IL 60402

STATE OF  Florida

COUNTY OF  Brevard

I HEREBY CERTIFY, that on this 24th day of March, 2006, personally appeared Bill Parsons (known to me or satisfactorily proven) to be the person who executed the foregoing, and acknowledged that the same is his/her act and deed.

WITNESS my hand and Notarial Seal.

_____
Notary Public

ANNETTE B. POORE
Notary Public - State of Florida
My Commission Expires Mar 1, 2007
Commission # DD179546
Bonded By National Notary Assn.

The foregoing offer is hereby accepted as of 3/24, 2006.

WINPAR HOSPITALITY LAREDO, LLC

By: WILLAM R. PARSONS,
MEMBER/MANAGER/PRESIDENT

3

Doc# 1031148

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

## SUBSTITUTE TRUSTEE'S DEED

STATE OF TEXAS            §
                          §
COUNTY OF WEBB            §

### Recitals

A.      By a certain Deed of Trust dated May 29, 2007, executed by **Thomas Alan Minor and William R. Parsons** ("Mortgagor" or "Debtor"), to Marco Montemayor, Trustee for **COMPASS BANK, AN ALABAMA BANKING CORPORATION, SUCCESSOR IN INTEREST TO LAREDO NATIONAL BANK**, filed for record as Document No. 967017, at Volume 2370, Page 122 et seq., of the Official Public Records of Webb County, Texas (the "Deed of Trust"). Mortgagor conveyed certain real property, including that certain real property situated in Webb County, Texas which is more particularly described as follows:

> **TRACT I: SITUATED IN WEBB COUNTY, TEXAS AND BEING THE SURFACE ONLY OF LOT NUMBER THIRTEEN (13), IN BLOCK NUMBER TWO (2), JACAMAN RANCH SUBDIVISION, UNIT 8, A SUBDIVISION IN THE CITY OF LAREDO, AS PER PLAT RECORDED IN VOLUME 25, PAGES 20-21, WEBB COUNTY PLAT RECORDS**

> **TRACT II: SITUATED IN WEBB COUNTY, TEXAS, AND BEING THE SURFACE ONLY OF LOTS NUMBERS ELEVEN (11) AND TWELVE (12) IN BLOCK NUMBER TWO (2), JACAMAN RANCH SUBDIVISION, UNIT 8, A SUBDIVISION IN THE CITY OF LAREDO, AS PER PLAT RECORDED IN VOLUME 25, PAGES 20-21, WEBB COUNTY PLAT RECORDS**

(the "Property"), together with any improvements thereon as described in the Deed of Trust, to secure the payment of the indebtedness (the "Indebtedness") evidenced by that certain **Note** in the original principal amount of **$743,000.00** (the "Note"), dated **May 29, 2007** executed by Mortgagor and payable to the order of **COMPASS BANK, AN ALABAMA BANKING CORPORATION, SUCCESSOR IN INTEREST TO LAREDO NATIONAL BANK** ("Mortgagee"), the beneficiary under the Deed of Trust, and any and all indebtedness secured and described in the Deed of Trust.

B.      Mortgagee, pursuant to the provisions of the Deed of Trust, by instrument dated **January 9, 2009**, had designated and appointed **Richard E. Haynes, II** or **Claudia L. Garcia** as Substitute Trustee under the Deed of Trust, to act in the place and stead of the original Trustee.

C.      Defaults have occurred in the terms of the Deed of Trust and such default has continued despite notice to Debtor from or on behalf of Mortgagee and an opportunity for Debtor to cure the default. Accordingly, Mortgagee has, because of such defaults, duly accelerated the Indebtedness and requested the undersigned, the duly appointed Substitute Trustee under the Deed of Trust, to enforce the trust and

Exhibit D



# L A R E D O
## TITLE & ABSTRACT

| | |
|---|---|
| **Date:** | May 26, 2014 |
| **GF Number:** | 6724-14 TS |
| **Issued to:** | Diversified Commercial Mortgage<br>11603 Hardwood Dr.<br>Midlothian, VA 23114 |
| **Attention:** | Alan Minor, |

We have searched the appropriate records of the Webb County Clerk as indexed in the abstract plant of Laredo Title & Abstract, from May 12, 1989 to May 12, 2014, and have found the following conveyances against the herein after described property:

**Legal Description:**  Tract I: Situated in Webb County, Texas and being the Surface Only of Lots Number Eleven (11) and Twelve (12), in Block Number One (1), JACAMAN RANCH SUBDIVISION, UNIT 8, a subdivision situated in the City of Laredo, as per Plat recorded in Volume 25, Pages 20-21, Webb County Plat Records.

Tract II: Situated in Webb County, Texas and being the Surface Only of Lot Number Thirteen (13), in Block Number One (1), JACAMAN RANCH SUBDIVISION, UNIT 8, a subdivision situated in the City of Laredo, as per Plat recorded in Volume 25, Pages 20-21, Webb County Plat Records.

**Record Owner:**  Northpoint Park, Ltd.

**Acquired By:**  Warranty Deed with Vendor's Lien dated March 10, 2011, executed by Compass Bank, recorded in Volume 3061, Page(s) 676-680, Webb County Official Public Records

**Liens:**  Vendor's Lien dated December 14, 2005, executed by J Development, Ltd., Grantor to Winpar Hospitality Laredo, LLC, Grantee, securing payment of Three Hundred Twenty Eight Thousand and 00/100 ($328,000.00) Note of even date therewith payable to the order of International Bank of Commerce, as therein provided, recorded in Volume 1989, Page(s) 174-179, Webb County Official Public Records; additionally secured by Deed of Trust of even date therewith to Wilfredo Martinez, Jr., Trustee, recorded in Volume 1989, Page(s) 180-193, Webb County Official Public Records. (Tract I) (Predecessor in Title)

Vendor's Lien dated May 5, 2005, executed by J Development, Ltd., Grantor to Francisco Pruneda, Jr. and wife, Laura Pruneda, Grantee, securing payment of Two Hundred Five Thousand and 00/100 ($205,000.00) Note of even date therewith payable to the order of International Bank of Commerce, as therein provided, recorded in Volume 1827, Page(s) 190-194, Webb County Official Public Records; additionally

EXhibiT B

IN THE CIRCUIT CIVIL COURT OF
THE 18TH JUDICIAL CIRCUIT IN AND
FOR BREVARD COUNTY, FLORIDA

**ELOISE K. HAHN** dba
Burke Financial, LLC,

       Plaintiff,

v.

**WILLIAM R. PARSONS** dba
WinPar Hospitality, LLLP,

       Defendant.

_____/

Case No.: 05-2007-CA-69527-XXXX-XX

### STIPULATION OF SETTLEMENT

COME NOW Plaintiff and Defendant and stipulate and agree as follows:

1.     All Parties hereto have reached an amicable resolution of this cause.

2.     The proper parties to this cause are Burke Financial, LLC, an Illinois limited liability company and WinPar Hospitality Laredo, LLC, a Florida limited liability company.

3.     Plaintiff Eloise K. Hahn has no cause of action against, and no liability attaches to, Defendant William R. Parsons, or any other member of WinPar Hospitality Laredo, LLC, a Florida limited liability company and this Stipulation of Settlement shall be deemed a General Release in favor of the signatories hereto and entities which they represent, other than her, individually and Burke Financial, LLC.

4.     Not later than April 16, 2008, the real property described in Exhibit A, attached hereto and made a part hereof by reference, located within the State of Texas shall be listed for a total sale amount of $1,300,000.00. The entity known as Lula Morales Realty, Inc., whose business address is 5615 San Dario, Suite 101, Laredo, TX 78041, shall be designated as Seller's Real Estate Agent.

5.     From the proceeds of sale of the real property described in Exhibit A hereto, there shall first be paid funds sufficient to satisfy all liens, mortgages, taxes, encumbrances and commissions appertaining thereto. From the remaining (net) proceeds of sale, WinPar Hospitality Laredo, LLC, shall pay Burke Financial, LLC, Two-Hundred Fifty Thousand Dollars ($250,000.00) and its proportional share of 18.2% of all sums in excess of said amount.

6.     This cause is hereby dismissed with prejudice

7.    The parties hereto represent that they have full authority to bind themselves and the entities designated as part of the signature blocks hereto.

8.    This Stipulation of Settlement may be executed in counterparts and facsimiles, each of which shall be considered an original.

Dated: _April 3, 2008_                        Dated: _April 8th 2008_

_Eloise K. Hahn_                                _William R. Parsons_
Eloise K. Hahn, individually, as Plaintiff       William R. Parsons, individually, as
and as Managing Member of Burke                  Defendant, and as General Partner of WinPar
Financial, LLC                                   Hospitality, LLLP, Managing Member of
                                                 WinPar Hospitality Laredo, LLC

                                                 Dated: _4 - 11 - 08_

                                                 _T. Alan Minor_
                                                 T. Alan Minor, individually and as Member,
                                                 WinPar Hospitality Laredo, LLC

IN THE CIRCUIT CIVIL COURT OF
THE 18TH JUDICIAL CIRCUIT IN AND
FOR BREVARD COUNTY, FLORIDA

**ELOISE K. HAHN** dba
Burke Financial, LLC,

     Plaintiff,

v.

**WILLIAM R. PARSONS** dba
WinPar Hospitality, LLLP,

     Defendant.
_____/

Case No.: 05-2007-CA-69527-XXXX-XX

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the Stipulation of Settlement attached hereto has been provided to **Eloise K. Hahn**, Plaintiff, 1631 S. Clarence Ave., Suite 2, Berwyn, IL 60402, by U.S. Mail, this 17th day of April, 2008.

               HOWZE, MONAGHAN & THERIAC, PLC
               Attorneys for Defendant


By: _____
               **J. Wesley Howze, Esq.**
               Florida Bar No.: 0181300
               96 Willard Street, Suite 302
               Cocoa, FL 32922
               (321) 639-1320